In the Matter of SIDNEY M. WITTNER, an Attorney, Respondent.

First Department, July 3, 1942.

*Einar Chrystie*, for the petitioner.

*Lloyd Paul Stryker* of counsel [*Raymond C. Murphy* with him on the brief; *Lloyd Paul Stryker*, attorney], for the respondent.

COHN, J. This is a disciplinary proceeding instituted by the Association of the Bar of the City of New York against respondent. In 1937 respondent, acting as attorney for plaintiff Fred L. Cole, brought an action in the Supreme Court of this State against Manufacturers Trust Company and certain of its officers and directors to recover the sum of $1,163,000 upon the theory that the trust company, its officers and directors, had converted securities belonging to Thomas F. Cole, the father of plaintiff. Respondent and the attorney for the bank went to California for the purpose of conducting an examination as a witness before trial of Thomas F.

Cole, who was a resident of Pasadena, Cal. The bank's attorney was accompanied by his wife and an assistant vice-president of the defendant trust company who had been active in the handling of the Cole transaction. While in Pasadena all three stopped at the Vista Del Arroyo Hotel, occupying adjoining rooms where matters relating to the pending litigation were discussed. With the aid of an attorney for the hotel corporation, who was acting with respondent, a microphone was installed in the room occupied by the attorney for the bank and his wife, and wires therefrom were connected with a dictograph apparatus in an adjoining room. Respondent asserts that the apparatus was installed to obtain information which would be of assistance to him to sustain the charges of conspiracy and fraud as alleged in the complaint in the action of Cole against Manufacturers Trust Company, and because he believed that the commissioner in California was co-operating with the bank's attorney. Transcripts of the stenographic notes of the conversations heard over the apparatus were delivered to respondent and to local counsel. For these acts respondent has been charged with professional misconduct.

The official referee to whom this disciplinary proceeding was referred to take proof of the charges set forth in the petition, has reported that the dictograph was installed by direction of respondent. The referee has also found as a fact established by the evidence that the alleged suspicions of respondent concerning the acts of the bank, of the California commissioner prior to the taking of testimony, and the conduct of the bank's attorney in the taking of the depositions, did not "justify the respondent in resorting to such a drastic and repulsive proceeding;" that events which had occurred subsequent to the installation of the dictograph in the hotel room could not be considered in justification or mitigation of respondent's offense; that notwithstanding the alleged suspicions of respondent, his conduct was wholly unjustified in the proceeding "inasmuch as all the rights of his client could be safeguarded by the recording of appropriate objections and motions in the taking of the deposition, there being no claim that the record was being improperly kept."

With the conclusions of the learned referee we fully concur. It is clear from all the testimony that respondent was directly responsible for an improper invasion of the professional and personal privacy of the attorney for the bank. Though his acts may have been inspired by too zealous a desire to protect what he conceived to be his client's rights and though he proceeded only after a consultation with others, including a prominent member of the California bar who advised him that the proposed installation of the

dictograph would not violate any statute of that State, we nevertheless think that respondent's conduct was highly unethical and reprehensible.

However, in view of respondent's long and hitherto unblemished record at the bar we think that condign punishment for the offense should be suspension from practice for a period of two years. Accordingly, respondent is suspended from practice for a period of two years with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

UNTERMYER and DORE, JJ., concur; MARTIN, P. J., and TOWNLEY, J., dissent and vote to disbar.

MARTIN, P. J. (dissenting). The respondent, after a hearing before an official referee, has been found guilty of professional misconduct. The basic facts giving rise to the charges are not in dispute. At his suggestion and with his approval a dictograph microphone was attached to the bed in a hotel bedroom occupied by opposing counsel and his wife. The microphone was connected by wires with a dictograph receiving set in an adjoining room occupied by a private detective and a stenographer who made notes of personal and private conversations of opposing counsel, his wife and his client. A typewritten copy of all conversations so recorded was then furnished to the respondent.

Although the referee has stated, and properly so, that " subsequent events cannot be considered in justification or mitigation of the respondent's offense," incidents occurring prior to and after the installation of the instrument may be adverted to in order clearly to demonstrate the animus of the respondent and the full extent of his misconduct.

The respondent was one of the attorneys representing Fred L. Cole, the plaintiff in an action brought to recover $1,163,000 from the Manufacturers Trust Company and others because of the alleged improper sale of collateral deposited as security for a loan. The suit was instituted in the Supreme Court, State of New York, County of Nassau. An order was entered therein requiring the plaintiff's father, Thomas F. Cole, to appear in Pasadena, Cal., on January 26, 1938, for examination as a witness. Mr. Ralph B. Merriam, a member of the California bar, was designated as commissioner to conduct the examination. Mr. Cole appeared and was examined upon the aforesaid and subsequent dates. The examination was conducted on behalf of the plaintiff by the respondent. He was assisted by another New York attorney, Morris Talbot, and a California attorney named James W. Morin.

Opposed to the respondent, on behalf of the defendant Manufacturers Trust Company, was another New York attorney. Shortly prior to the examination he had been married and his wife accompanied him to California. An assistant vice-president of the defendant trust company also went to Pasadena to assist in the taking of testimony. During the pendency of the examination and the legal proceedings in connection therewith, the defendant's attorney and his wife resided at the Vista Del Arroyo Hotel in Pasadena. During part of the time the assistant vice-president of the bank occupied a room in the same hotel and frequent conferences were held between him and defendant's attorney in the latter's room.

On February 3, 1938, while the examination of Mr. Cole was pending before Commissioner Merriam and during a discussion between the trust company's vice-president and its attorney in the latter's hotel room, the wife of the attorney discovered that a microphone was attached to the bed in the room. Wires from that apparatus were connected with a receiving set in an adjoining room occupied by a detective and a stenographer who made notes of the conversations heard by use of said apparatus, much of which was of a personal and private nature.

On the following day Judge FRANK C. COLLIER of the Superior Court of California was conducting a hearing on objections to questions asked during the examination of Mr. Cole before Commissioner Merriam. He had presided at similar hearings on February first and February second. During the course of the proceedings the attorney for the trust company informed the judge of the discovery of the microphone and other apparatus. At the close of the session the judge asked the respondent if he installed the microphone in the bedroom of his opponent, and the respondent, relying upon the literal truth that he personally had not physically installed the apparatus, said " No," but offered no further explanation, notwithstanding the fact that he had procured and was responsible for such installation.

Thereafter a contempt proceeding against the respondent and others who participated in the installation of the dictograph apparatus was instituted in the Superior Court of California. The proceedings continued for several days before Judge COLLIER. During the hearing the respondent and the others charged with contempt moved before Judge RUBEN S. SCHMIDT, also of the Superior Court, California, to disqualify Judge COLLIER because of prejudice. While this latter proceeding was pending, Judge COLLIER agreed to withdraw. The contempt proceedings were then conducted by Judge CLEMENT L. SHINN of the same court.

The testimony before Judges COLLIER and SHINN, and before the official referee, disclosed that a luncheon at the University Club in Pasadena on January 29, 1938, was attended by Mr. Morin, the respondent and others interested in the plaintiff's cause of action. At that time it was decided to install a microphone in the hotel bedroom occupied by opposing counsel and his wife. At this point it should be noted that Mr. Cole, who was being examined before trial, had assigned his cause of action against the trust company and the other defendants to his son, the plaintiff therein. Mr. Cole, senior, was a stockholder in the Vista Del Arroyo Hotel corporation and his attorney was Mr. Morin, who was then engaged in assisting the respondent. After this luncheon conference, Mr. Morin engaged a private detective named Freeman, a retired chief of police of Pasadena. Thereafter Freeman's employees attached a microphone to the bed in the hotel bedroom occupied by the attorney for the trust company. A detective and a stenographer listened in an adjoining room to the privileged conversations between the vice-president of the trust company and the trust company attorney, and also to personal conversations between the attorney and his wife. Typewritten reports of these conversations were furnished by the detective agency to the respondent and to Mr. Morin.

The responsibility of the respondent for the installation of this apparatus was clearly established by the following testimony given by him before Judge SHINN in the contempt proceedings in California: " * * * if there is any culpability or any criticism by reason of these acts, I feel I should assume responsibility, and I want to assume responsibility before this court or before any other court in which the matter may be now or at some future time be."

In the same proceeding Mr. Morin gave testimony which established that the respondent directed that a dictograph be used. He testified:

" Q. Permit me to call your attention to a talk which has been mentioned which took place at the University Club at Pasadena on the afternoon of January 29, 1938. * * * Mr. Wittner stated that you had luncheon, is that correct? A. Yes. Q. Now, will you state what was said, if you recall, with respect to the installation of a dictograph. By the way, Mr. Morin, as a preliminary question, you and Mr. Wittner and Mr. Talbot were there? A. Yes, well, I can't recall in any detail the conversation but the initiative in the conversation was with Mr. Wittner, and he expressed himself as being very much concerned on one or two developments that so far had come in the course of the deposition. * * *

At that time I must confess that I frankly was not personally disturbed, but I had not, as I have said, lived with that case, I had not any mature opinion on any tactics involved in the case, and I had studiously refrained from offering suggestions, for fear that I might be only confusing the minds of those who were directing the case. Q. Well, now, can you recall anything else that was said by any parties on that point? A. My recollection is that we were to have lunch, and sitting around the table, after lunch, for a period of an hour and a half, or something more; and my recollection is that Mr. Wittner suggested that he felt it was necessary that, if possible, a dictophone should be installed. I was not enthusiastic about it in my expression, and I think a great deal of the time was taken in reluctance upon my part as to the advisability of having the thing; * * *. The upshot of the conversation was that Mr. Wittner asked me if I would investigate and see what could be done about a dictophone. Of course, I take it that we really should have expressed it as a ' dictograph.' I had never seen one before, I had never used one."

In addition, the detective, Freeman, testified in the same proceeding that he personally called the respondent on the telephone and obtained a confirmation of the order to install the apparatus.

At the close of the contempt proceedings, Judge SHINN reached the conclusion that the respondents should be discharged because he believed they did not commit the acts complained of for the purpose of obtaining confidential information for use in connection with Mr. Cole's examination in California. His opinion is in part as follows: " However outrageous and indefensible the invasion of the privacy of * * * may have been, and however unethical and reprehensible it may have been for respondent members of the Bar to seek to overhear by wrongful means confidential communications between an opposing attorney and his client, no contempt of court was committed unless the acts tended to embarrass, impede or interfere with the due administration of justice in a proceeding pending in a court of this State. The deposition was the only such proceeding. If, therefore, it does not satisfactorily appear that the respondents or some one or more of them installed the dictograph in order to gain forbidden information for use in the taking of Mr. Cole's deposition, the charge of contempt of court must fall. If it was the purpose of the respondents to make use of the information to be gained in preparation for or in the trial of the case in New York, this court has no jurisdiction to punish the act as a contempt, even though the same acts would be punishable by the courts of New York." (Petitioner's Exhibit No. 21.)

Aside from the reprehensible act of attaching the instrument to the bed of opposing counsel and his wife, its installation and use

clearly violated the rights of privacy and personal security of the lawyer and his wife and constituted professional misconduct on the part of the respondent. The latter told Judge COLLIER he did not install the dictograph, but in the contempt proceedings, after his participation therein was fully established by the testimony of the detective, and it became advisable to admit his part therein, he finally assumed full responsibility for the act. Nevertheless, in his answer to the charges contained in the petition he denied under oath that he had specifically approved such installation.

The respondent submitted various reasons for his actions. Many of them were proved to be false. They were mere pretexts offered in the hope of escaping punishment.

He attempted to justify his conduct on the ground of his alleged suspicion that the privacy of his client's files had been invaded. This belief rested wholly upon the fact that the defendant's attorney had inquired whether the original of a certain letter, a copy of which was produced by the respondent from Mr. Cole's files, had any note or memorandum thereon. Subsequently the original of said letter was found in Mr. Cole's files, and on it was a note or memorandum written by Mr. Cole after its receipt. The respondent says that this coincidence aroused his suspicion that the defendant had unlawfully gained access to, and inspected, his client's files. It should not need any argument to demonstrate to an attorney —. and the respondent is a man of experience — that even a colorable suspicion that an unlawful act has been committed affords no justification for another unlawful act in retaliation.

He also claimed that Commissioner Merriam, before whom Mr. Cole appeared for examination, was not impartial. That suspicion was based in part upon letters and telegrams sent by the defendant's attorney to the commissioner in connection with the preliminary arrangements for the taking of the deposition. These letters are the usual and necessary letters in such a case. In addition, a visit by defendant's attorney to the commissioner prior to the first hearing also relates to the preliminary arrangements. At the time of the installation of the microphone, the respondent did not know about the letters, telegrams or visit, and they could not, therefore, have afforded any possible basis for his actions.

The respondent further points to the fact that the commissioner was at the railroad station when he arrived. No connection between that fact and the examination in question was shown. The respondent's assertion that the commissioner in going to the station might have been trailing Mr. Cole is without any support in the record. He might have gone to the station for many different reasons.

He also adverts to the fact that the commissioner telephoned him to ask if he would waive all objections to the testimony pending the use thereof in New York. It is not unusual to enter into such a stipulation, leaving the competency, materiality and relevancy of questions to be determined at the trial. Such a stipulation tends to simplify and expedite the hearings, and a request therefor could not reasonably give rise to any assumption of impropriety.

The respondent refers to a visit by the commissioner to Judge COLLIER before whom counsel were to appear for the purpose of obtaining rulings upon objections raised at the hearings. Some one had to make the arrangement and the most appropriate person would be the commissioner, presumably a disinterested party. Moreover, Judge COLLIER took no part in the proceedings until after the installation of the microphone.

It is also contended by respondent that his suspicions were confirmed by the alleged fact that the defendant's attorney was heard through the dictograph to say the commissioner had " got the judge." The attorney denied he had used such an expression and claimed what he said was that the commissioner saw the judge or had gotten in touch with him. This was in connection with the commissioner's visit to the judge to arrange for a hearing before him.

Reference is also made to the fact that defendant's attorney was heard to say that the judge had remarked concerning the respondent: " If I had that guy Wittner before me he would not last thirty seconds." Assuming that such a remark was made, it could afford no justification for the installation of a microphone at a period long prior to the time of the alleged remark, and does not warrant an invasion of the privacy of parties who were in no way shown to have been responsible for the attitude of the judge toward the respondent. The remark of the judge appears to have been caused by the respondent's failure to adhere to the judge's rulings upon the objections.

Reliance is further placed upon the fact that Judge COLLIER withdrew from the contempt proceedings against the respondent and others after a disqualification proceeding had been instituted. That, too, is another incident which occurred long after the installation of the microphone, and it does not in any way tend to substantiate the respondent's alleged suspicions or offer any justification for his conduct.

Even if it be assumed that the aforesaid and other subsequently occurring facts tend to confirm the respondent's alleged suspicion that unfair tactics might be employed against his client, it would not be a justification for his acts. So to hold would open wide the door to eavesdropping and illegal espionage.

The attitude of the respondent is clearly established by the fact that after the contempt proceedings against him had terminated, he unsuccessfully attempted to have his opponent indicted in California, charging that the latter committed perjury and that the respondent intended to use the information obtained by the dictograph operators to establish the charge.

In finding that the respondent was responsible for installing the microphone and other apparatus and that there was no justification for such installation sufficient to relieve him from the charge of professional misconduct, the referee subscribed to Judge SHINN's characterization of respondent's conduct as " outrageous and indefensible " and " unethical and reprehensible " in the invasion of the privacy of opposing counsel and the latter's wife. The referee then said: " * * * notwithstanding the alleged suspicion of the respondent his conduct was wholly unjustified in the proceeding." The report of the referee that the allegations contained in the petition have been fully sustained is established by the evidence.

Professional men are presumed to be men of honor and, in most instances, have demonstrated the truth of that assumption. Members of the legal profession have had sufficient training to realize that ethical practices must be followed in their dealings with each other and with their fellow men. The legal profession has been frequently criticized because some of its members have resorted to dishonorable conduct in efforts to win cases or injure opponents. The present case forcibly demonstrates that such practices are at times resorted to by some members of the bar. The justices of this court in recent years have been so frequently confronted with conduct which discloses a lamentable absence of appreciation of ethical standards that it has become necessary to impress upon the members of the bar that if the honorable traditions of the legal profession are to continue to be maintained. men who stoop to such practices must be disbarred.

The conduct of respondent was unpardonable and clearly demonstrates he is unfit to remain a member of an honorable profession.

The respondent should be disbarred.

TOWNLEY, J., concurs.

Respondent suspended for two years.